U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
AUG - 8 2013
CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| OSWALD MISIGARO, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:12-CV-767-A |
| | § | |
| WILLIAM STEPHENS, Director,[1] | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Oswald Misigaro, a state prisoner currently incarcerated in Gatesville, Texas, against William Stephens, Director of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ), respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

---

[1] Effective June 1, 2013, William Stephens succeeded Rick Thaler as the Director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Director Stephens "is automatically substituted as a party." FED. R. CIV. P. 25(d).

## I. Procedural History

In May 2007 petitioner pleaded guilty to a jury in the Criminal District Court Number Two of Tarrant County, Texas, Case No. 1090943R, to two counts of aggravated sexual assault of a child, and the jury assessed his punishment at forty years' confinement on count one and fifty years' confinement on count two. (SHR at 120-24[2]) Petitioner appealed his convictions, but the Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused his petition for discretionary review. (*Id.*) *Misigaro v. State*, PDR No. 1276-08. Petitioner also sought postconviction state habeas corpus relief, to no avail. (SHR at cover)

At trial, petitioner testified and admitted to engaging in sexual contact with the child victim, an eight-year-old girl, on two occasions. (RR, vol. 4, at 164-65) The victim testified the sexual abuse began when she was seven years old and occurred more times than she could count. (RR, vol. 4, at 122)

## II. Issues

Petitioner raises six ineffective assistance of counsel claims:

---

[2]"SHR" refers to the state court record of petitioner's state habeas proceeding in WR-76,326-02.

2

(1) trial counsel was ineffective by failing to accurately advise him regarding plea offers;

(2) trial counsel was ineffective by failing to adequately investigate, develop and present evidence that could have produced a lower sentence;

(3) trial counsel was ineffective by failing to conduct an effective voir dire that would have weeded out jurors inclined to impose a harsh sentence because of their personal experiences instead of the facts, denying him the right to an impartial jury;

(4) trial counsel was ineffective by using "denigrating epitaphs" and failing to object to "dehumanizing argument";

(5) appellate counsel was ineffective by failing to investigate, prepare and file a motion for new trial, causing his appeal to be deemed frivolous; and

(6) trial counsel was ineffective by failing to inform him that his guilty pleas would result in automatic deportation.[3]

(Pet. at 6-7 & Insert[4])

### III. Rule 5 Statement

Respondent believes that petitioner's claims have been

---

[3] Any additional claims and/or legal arguments raised for the first time in petitioner's reply brief will not be considered. (doc. no. 17) *United States v. Sangs*, 31 Fed. Appx. 152, 2001 WL 1747884, at *1 (5th Cir. Dec. 11, 2001) (citing *United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998)).

[4] The insert to the petition is not paginated.

exhausted in state court[5] and that the petition is neither barred by limitations nor subject to the successive petition bar. (Resp't Ans. at 12)

## IV. Discussion

### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v.*

---

[5]Respondent asserts petitioner failed to exhaust his eighth claim, however there is no eighth claim.

4

*Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits. *Barrientes v. Johnson*, 221 F.3d 741, 779-80 (5th Cir. 2000); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

In this case, the state habeas court entered findings of fact, which were adopted by the Texas Court of Criminal Appeals. (SHR at 80-91, 157) Petitioner has failed to rebut the state courts' factual findings by clear and convincing evidence; thus, this court defers to those findings in addressing petitioner's claims below.

### *Ineffective Assistance of Counsel*

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. *See also Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

Further, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the

distorting effects of hindsight. *Id.* at 689.

Where the state courts have applied the *Strickland* attorney-performance standard to factual findings, a federal court will defer to the state courts' determination unless it appears the decision was contrary to or involved an unreasonable application of *Strickland*, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the state court proceedings. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002).

Petitioner claims his trial counsel, Mamie Bush Johnson, rendered ineffective assistance because counsel (1) failed to accurately advise him regarding the state's plea offers, (2) failed to adequately investigate and develop evidence or present character witnesses in mitigation of punishment, (3) failed to conduct an effective voir dire that would have weeded out jurors inclined to impose a harsh sentence based on their personal experiences, (4) used "denigrating epitaphs" and failed to object to "dehumanizing argument" by the state, and (5) failed to inform him that his guilty pleas would automatically result in deportation. (Pet., Insert) In response to the allegations, counsel filed an affidavit stating:

. . .

7

Mr. Misigaro and I spent a great deal of time discussing his options of accepting a plea agreement with prison time or having a jury trial. In fact the record will reflect as seen in Exhibit A that I wrote out charts to help him to better understand. After several meetings I felt that he fully understood that if he rejected the prison time offer, his time could be worse. I explained to him that in my experience if a Tarrant County Jury did not agree on probation he would most likely receive 40 to 50 years in prison. Mr. Misigaro did not want to go to prison and was willing to risk whatever he had to in order to seek probation. My paralegal, Janice Webster is a witness to the fact that I encouraged him to consider accepting the plea offer. He was aware of all deadlines for accepting or rejecting the offers.

From the first time I met Mr. Misigaro, he told me that he was not a US citizen. I made sure he knew that if he was found guilty or pled guilty that he would most likely be deported. However, he informed me that as a refugee from a country at war that he would not be deported back to that Country. Ms. Webster (paralegal) was a witness to this also.

Every time we spoke regarding his case and/or trial I emphasized that he could be deported. Mr. Misigaro continued to remind me that he was a refugee and he felt that he most likely would not be deported to the country he came from because of the violence going on in his home country. Based upon the evidence against him, Mr. Misigaro knew that the only chance he might have to avoid prison was to plea [sic] guilty and seek probation before a jury. I did inform him that the Judge had a history on NOT granting probation to non US citizens.

THE RECORD REFLECTS:

Volume 2- Page 5 of the Court's Transcript beginning at line 18, the court asked the Defendant did he understand and persist in pleading guilty that he will instruct the jury to set his punishment between 5-

99 years or life in the penitentiary, and the client said he understood.

Volume 3- Page 6 beginning at line 3- It was put on the record that Mr. [Misigaro] was offered 15 years TDC and rejected it. Page 8- beginning at line 1 - He was admonished by me that he could get 20, 30[,] 40 or more years and it was still his decision to have a trial. Page 8- starting at line 22 Defendant stated he was satisfied with my representation. Page 7 beginning line 8 I explained that he could only get probation through the jury at a trial. But at the same time if they found him guilty, the jury could reject probation and give him 5-99 or life.

. . .

Mr. Misigaro admitted to me that he was in fact guilty of the charge against him. He also expressed that he did not know why this was a big deal because in his Country it is not. I asked him, as I do all clients, to provide me with a list of witnesses that he would like to testify on his behalf, he declined. In fact, he did not want the details of the case shared with his family and friends. We spoke about retaining or getting the Court to appoint an expert to testify at trial, but based upon his desires and cultural background we agreed this would most likely do more harm than good.

. . .

As with all jury trials, the majority of the panel has experienced, or know of someone who has been a victim of sexual abuse. Therefore, it was my strategy to inflame individual panel members that would show their bias or prejudice[] to keep them off the jury. Since he pled guilty it gave me the advantage to talk more openly about the facts of the case. Usually during a guilt/innocence trial these facts would be objected to by the District Attorney. We were successful in getting some struck for cause.

> . . .
>
> During Vior [sic] Dire, I used the phrase "this Sex Offender" to inflame the jury so that their bias would show and I could have them removed from the jury panel for cause . . . .

(SHR at 92-94) (emphasis in original)

Based on counsel's affidavit and the record of the proceedings, the state habeas court entered the following detailed findings of fact:

> 5. Applicant presents no evidence to support his claim that Hon. Johnson failed to properly advise him regarding the State's fifteen year plea offer.
>
> 6. Hon. Johnson wrote out charts to better understand Applicant's options.
>
> 7. Hon. Johnson advised Applicant that if he rejected the fifteen year plea offer, he could get a longer sentence at trial.
>
> 8. Hon. Johnson advised Applicant that, based on her experience, if the jury did not grant him probation they would most likely sentence him to forty-fifty years.
>
> 9. Hon. Johnson recalls that Applicant did not want to go to prison and was willing to do whatever he had in order to get probation.
>
> 10. Hon. Johnson advised Applicant to take the fifteen year plea offer.
>
> 11. Applicant testified on the record that he was advised of the fifteen year plea offer.
>
> 12. Hon. Johnson advised Applicant of the deadlines in accepting the State's offer.

13. Applicant agreed that Hon. Johnson attempted to negotiate a lesser sentence.

14. There is no evidence that Hon. Johnson failed to discuss the ten year sentence counteroffer with the State.

15. Applicant testified that he could receive "20, 30, or 40 or even more" time in prison if he did not accept the plea offer.

16. Applicant testified that he was aware of the only way to receive probation would be through a jury trial.

17. Applicant testified he was aware of the full range of punishment.

18. Applicant testified that Hon. Johnson explained everything to him.

19. Hon. Johnson advised Applicant that he would most likely be deported if he pled guilty.

20. The trial court advised Applicant that his plea "may result in deportation."

21. Even though Hon. Johnson advised him that he would most likely be deported, Applicant was confident he would not because he was a refugee.

22. Hon. Johnson emphasized to Applicant that he could be deported.

23. Applicants presents no evidence or affidavits from witnesses willing to testify on his behalf that counsel failed to interview.

24. Applicant presents no evidence to support his claim that he gave Hon. Johnson names of witnesses to interview.

25. Applicant presents no evidence to support his

11

claim that counsel refused to interview witnesses because they were "Africans."

26. Applicant presents no evidence to support his claim that counsel refused to interview witnesses because they were "Jehovah Witnesses."

27. Applicant admitted to Hon. Johnson that he committed the offense.

28. Hon. Johnson recalls that Applicant declined to give him a list of witnesses because he did not want the case discussed with family or friends.

29. Hon. Johnson and Applicant discussed hiring an expert but concluded, together, that that would most likely do more harm than good based on Applicant's desires and cultural background.

30. Applicant presents no evidence to support his claim that there was evidence that Hon. Johnson was given and failed to present.

31. Hon. Johnson called Applicant's bond supervision officer to testify on his behalf.

32. Hon. Johnson called Applicant to testify at his decision.

33. Hon. Johnson was aware of the State's files pursuant to their "open file" policy.

34. Hon. Johnson was aware of exactly what was on the videos in the State's possession.

35. The State thoroughly discussed during voir dire whether the jury could consider the full range of punishment.

36. The State thoroughly asked the jury panel as to whether they could be fair and impartial and listen to the evidence before deciding punishment.

37. Hon. Johnson tried to inflame the jury panel members to show their bias or prejudice.

38. Hon. Johnson used the term "this Sex Offender" to inflame the jury so she could strike them for cause.

39. Hon. Johnson asked every jury member whether they could consider the full range of punishment.

40. Hon. Johnson's voir dire consisted of questions that set up the jurors to be struck for cause.

41. As a result of her questions, Hon. Johnson made challenges for cause of numbers 3, 9, 10, 14, 15, 20, 26, 28, 34, 39, 40, 41, 43, 47, and 48.

42. The State agreed to Hon. Johnson's challenges for cause.

43. Hon. Johnson's voir dire was the result of reasonable trial strategy.

44. The State asked the jury for a life sentence.

45. Hon. Johnson argued to the jury that Applicant should get probation because he needed psychological help that he couldn't get in prison.

46. The State told the story about a chicken farmer with his dog.[6]

---

[6] Petitioner complained of the following argument:

You ever hear the story about the farmer who had a son, young boy, had a dog. He loved that dog. The dog's name was Red. Did you ever hear that story?

And the thing about the farmer, he was a chicken farmer. On morning he wakes up, and realized that one of his chickens was missing. There would be blood
(continued...)

13

47. The State specifically stated that it wasn't calling Applicant a dog.

48. The State explained that Applicant has the "taste of little girls on his tongue and in his mind.

---

[6](...continued)
droplets. That farmer knew the dog killed the chicken. He was worried that if it was the dog, he knew what he was going to have to do.

Next morning another chicken was missing, and he saw the evidence. Blood dripping from the dog's mouth, a little feather there, chicken gone. And the farmer right then and there, he had to tell the son to get rid of it. He said, "I love that dog. He does good things. He works. He helps me with things. He makes me happy."

He said, "Son, the problem here is that dog has had the taste of chicken on his tongue, and once they get that taste, they just can't shake it." Even though the dog was a good dog to this point, they had to put him somewhere where a chicken couldn't be taken again.

That's what you have here before you. I am not calling the Defendant a dog. What I will tell you is that he has had the taste of little girls on his tongue and in his mind. You need to think about how he had her on that bed and he pulled out his erect penis and was aroused and how he put it in and out from her testimony, how he moved it around, how it felt weird to her. And in her own childish way, she felt it watery. You know that that was. However quick he say it may be.

So the real question here is are you going to put him back out in the chicken coop we call society and take that chance again? You wouldn't take a chance with a chicken. Should the child have to take it?

(RR, vol. 4, at 209-10)

> 49. The State argument that Applicant had a proclivity from [sic] young girls was a reasonable deduction from the evidence and a response to opposing counsel's argument.
>
> 50. Hon. Johnson's affidavit is credible and supported by the record.

(02SHR 97-99) (citations to the record omitted)

Based on its findings, and applying the *Strickland* standard, the state habeas court concluded petitioner had failed to prove that counsel did not properly advise him regarding the matter of deportation, the State's plea offer and the deadline for accepting the plea offer or that counsel did not attempt to negotiate a lesser sentence. The court concluded that petitioner failed to prove counsel did not adequately investigate the case and develop the available evidence or that there was evidence counsel did not present or witnesses counsel refused to interview. The court further concluded that counsel's voir dire was the result of reasonable trial strategy and that, as a matter of state law, the state's jury argument was proper. In sum, the court concluded that petitioner failed to prove he received ineffective assistance of counsel or to show a reasonable probability exists that the outcome of his trial would have been different but for counsel's alleged acts or omissions. (SHR at 102-03)

Deferring to the state court's findings, petitioner has failed to demonstrate the state courts unreasonably applied *Strickland* based on the evidence presented in state court. 28 U.S.C. § 2254(d). Clearly, petitioner pleaded guilty to the jury with the hope he would receive a sentence of probation only. But there were no guarantees. Counsel properly advised petitioner of his options, the full range of punishment and that his guilty pleas would subject him to deportation. Petitioner exercised his own choice to plead guilty and accepted the risk of uncertainty of his sentence in the hope of a probated sentence. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g (West Supp. 2012). The fact that the jury did not recommend probation does not render counsel's representation deficient.

Further, petitioner provided no evidentiary basis in state court, in the form of exhibits or affidavits, for his claims that counsel failed to investigate, develop evidence and call witnesses on his behalf. Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue. *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998). Nor do the strategic decisions made by counsel generally provide a basis for postconviction relief on grounds of ineffective assistance. *Strickland*, 460 U.S. at 689.

After petitioner chose to plead guilty, the strategy adopted by counsel faced with the facts of this case was not unreasonable and likely succeeded in obtaining the best possible outcome under the circumstances. Finally, counsel is not required to make frivolous objections. *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995). The state courts found the state's jury argument to be proper; thus, any objection would have been futile. Petitioner is not entitled to relief.

Petitioner also claims his appellate counsel was ineffective by failing to advise him regarding potential grounds, reasons and benefits of filing a motion for new trial and to investigate, prepare and file a motion for new trial. (Pet., Insert) Under Rule 21.2 of the Texas Rules of Appellate Procedure, "[a] motion for new trial is a prerequisite to presenting a point of error on appeal only when necessary to adduce facts not in the record." TEX. R. APP. P. 21.2. Petitioner asserts that counsel should have filed a motion for new trial raising his ineffective assistance claims against trial counsel and, based on a hand written note by trial counsel stating the "judge will not give non U.S. citizen probation," a claim that the judge refused to consider his motion for probation because of his national origin. (SHR at 62)

The state habeas court found that petitioner had failed to

17

"explain what evidence was available to support his ineffective assistance of counsel claims in a motion for new trial[,]" that trial counsel's note was not evidence the trial court would not consider the full range of punishment or would not consider a motion for probation because of Applicant's national origin, and that petitioner had otherwise failed to raise a meritorious claim or demonstrate that he was harmed by counsel's failure to file a motion for new trial. (SHR at 100-01) The court further found there was evidence that counsel "advised [petitioner] that a motion for new trial would affect the delay of the reporter's record and he [the petitioner] wanted to make sure 'that the statement of facts [was] prepared at the earliest reasonable time.'" (SHR at 100) Based on its findings, the court concluded petitioner failed to prove that appellant counsel's representation was deficient for not filing a motion for new trial or that a reasonable probability exists of a different result on appeal had counsel done so. (SHR at 104)

Deferring to the state court's findings, petitioner has failed to demonstrate the state courts unreasonably applied the standards set forth in *Strickland* based on the evidence presented in state court. 28 U.S.C. § 2254(d). Petitioner failed to show what additional information would have resulted from a motion for

new trial, specify any facially plausible claim that counsel could have raised in a motion for new trial or demonstrate that a motion for new trial would have been granted. Petitioner is not entitled to relief.

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED August ___8___, 2013.

_____
JOHN McBRYDE
UNITED STATES DISTRICT JUDGE